**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **GREGORY C. MORSE** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Case No. 4:12CV375** |
| | § | |
| **COMMONWEALTH LAND TITLE** | § | |
| **INSURANCE COMPANY, ET AL.** | § | |
| | § | |
| **Defendant.** | § | |

<u>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**</u>

Now before the Court are Defendant Commonwealth Title Insurance Corporation's Motion to Dismiss for Plaintiff's Failure to State a Claim (Dkt. 15) and Defendants Homecomings Financial, LLC ("Homecomings"), GMAC Mortgage, LLC ("GMAC"), Ally Bank ("Ally"), Mortgage Electronic Registration Systems, Inc. ("MERS"), MERSCORP, Inc., and Federal National Mortgage Association's ("Fannie Mae") Motion to Dismiss (Dkt. 17). The Court finds that the motions should be GRANTED as set forth below.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's suit arises out of the refinance of Plaintiff's home located at 223 High Point Drive, Murphy, Texas 75094 ("the Property") in "early 2008." In his live complaint, Plaintiff contends that he has not filed this suit in response to any attempt to foreclose on the Property but instead because "the certainty of Plaintiff's contract with one or more of Defendants is clouded by events as they pertain to the involvement of MERS." Dkt. 14 at ¶37.

This is Plaintiff's second lawsuit regarding the refinance of his home.  The first suit (which was handled by the undersigned by the consent of the parties) was filed on April 26, 2011 against Defendants Robert Stanley, ABB Mortgage, Walid Abd, Pinnacle Title Company, L.P., Commonwealth Land Title Insurance Company, Homecomings Financial L.L.C., Homecomings Wholesale Funding, GMAC Mortgage, MERS, Inc., MERSCORP, Inc., and Federal National Mortgage Association a/k/a Fannie Mae.[1]  *See* Dkt. 1 in 4:11cv230.   In that suit, Plaintiff brought claims of (1) common-law fraud; (2) fraud under Tex. Bus. & Com. Code §§ 27.01(b) and (e); (3) breach of contract; (4) violation of the Texas Mortgage Broker License Act; (5) violation of the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act; (6) claims under RESPA or TILA; and (7) a suit to quiet title, as well as other relief.   On March 23, 2012, the Court dismissed the suit finding that Plaintiff's RESPA and TILA claims were barred by the statute of limitations and declining to exercise supplemental jurisdiction over the remaining state law claims.[2]

Plaintiff filed this second suit in state court on May 18, 2012.  On June 20, 2012, the matter was removed to this Court.

---

[1]All of the Defendants in this second suit with the exception of Ally were named in the first suit, and all but Commonwealth appeared through counsel therein.  Stanley, ABB Mortgage, Abd, and Pinnacle are not named Defendants in this matter.

[2]Because there were Texas defendants in the first suit, there was no diversity jurisdiction and subject matter jurisdiction was premised solely on federal question jurisdiction by virtue of the TILA and RESPA claims.  In the underlying suit, Defendants removed based on both diversity and federal question jurisdiction.

Since removal, Plaintiff has amended his complaint.  *See* Dkt. 14.  Plaintiff asserts the following causes of action against Defendants Commonwealth Land Title Insurance Company, Homecomings Financial, L.L.C. ("Homecomings"), Homecomings Wholesale Funding,[3] GMAC Mortgage, L.L.C. ("GMAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), MERSCORP, Inc., Ally Bank f/k/a GMAC Bank ("Ally"), and Federal National Mortgage Association ("Fannie Mae"): (1) fraud; (2) breach of contract; (3) violation of the Texas Mortgage Broker License Act, Texas Finance Code § 156.001, et seq.; and (4) violation of the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act, Texas Finance Code §157.001, et seq.  Plaintiff also seeks declaratory judgment regarding various issues, an accounting, exemplary damages, and attorneys' fees.

In Plaintiff's declaratory judgment claim he argue that he does not currently have clear title and seeks declaratory judgment that; (1) there was not a lender at the closing; (2) the lender was not Homecomings Financial; (3) no entity had a right to transfer an interest to Fannie Mae; (4) there is not a lien on the Property; (5) what entities, if any, have any interest in Plaintiff's mortgage; and (6) what entities, if any, have an interest in Plaintiff's Property.  *See* Dkt. 14 at ¶162.

Plaintiff also asserts "Other Causes of Action," stating "[a]lthough not specifically alleged due to insufficient information, Plaintiff serves notice that one or more Defendants may have violated both State and Federal banking, finance, fraud, and racketeering statutes in continuing violation which may survive the claim of limitations, a matter that will not become clear until

---

[3]Although named in Plaintiff's amended complaint, this Defendant has not made an appearance herein.  Therefore, this matter having been on file for more than 120 days, the claims against that entity should be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

discovery is allowed since certain Defendants essentially refused Plaintiff's earlier requests for information." Dkt. 14 at ¶176.

Defendants have filed motions to dismiss, seeking to dismiss Plaintiff's claims. Defendants Homecomings, GMAC, Ally, MERS, MERSCORP., Inc and Fannie Mae make the following arguments: (1) Plaintiff fails to state a plausible claim for quiet title because Plaintiff's underlying attack on MERS lacks merit and because Plaintiff's split the note theory has been repeatedly rejected by Texas Courts; (2) Plaintiff has not pled his fraud allegations with sufficient particularity; (3) Plaintiff fails to state a plausible DTPA claim; (4) Defendants are not liable under Texas Business and Commerce Code Section 27.01; (5) Plaintiff fails to state a plausible RICO claim; (6) Plaintiff's breach of contract claim should be dismissed as a matter of law; (7) Plaintiff fails to state a plausible claim under Texas Mortgage Broker or banker provisions of Texas Finance Code Sections 156.001 and 157.001, *et seq.*; and (8) Plaintiff has no grounds to request an accounting.[4] Defendant Commonwealth, a title insurance company who was named in but did not appear in the first suit, has also filed a motion to dismiss this second suit, arguing that Plaintiff has failed to state any claim

---

[4]The Court notes that, on September 10, 2012, Defendants Homecomings and GMAC filed a Notice of Bankruptcy Filing. *See* Dkt. 16. According to that Notice, Plaintiff's declaratory judgment claim, to the extent it is an attack on the validity of the lien, is a "Permitted Claim" against Homecomings and GMAC that may proceed before this Court. Plaintiff's other claims, including his claims for fraud, breach of contract, RICO violations, violations of the Texas Mortgage Broker License Act, violations of the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act and his request for an accounting are not Permitted Claims against Homecomings and GMAC. Therefore, they remain subject to the automatic stay, and the continued prosecution of these claims is prohibited. Additionally, any claims for monetary relief against Homecomings and GMAC – including claims for damages or requests for attorneys' fees and costs – are not Permitted Claims and are stayed. Thus, as to GMAC and Homecomings, these Defendants are moving to dismiss only as to the declaratory judgment claim. The Court's findings herein shall be applied accordingly.

against it.[5]

Plaintiff has filed a response in opposition.  Plaintiff's response attaches approximately 100 pages of exhibits in support of his position.

The Court notes that Plaintiff is proceeding *pro se* herein.  Plaintiff has amended his complaint once and has not sought leave of court to amend since the filing of Defendants' motions some eleven months ago.  The motions have been pending long enough to advise Plaintiff of any deficiencies in his pleadings, and the Court thus addresses the record before it.

## STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed.2d 929 (2007).  In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary

---

[5]The Court notes that Commonwealth seeks dismissal on many of the same grounds as the other Defendants but also argues that there are no allegations in the complaint that it has or had an interest in the Property or the loan at issue because the only allegations against it specifically is that it issued a title insurance policy.  Because the Court finds that no claims have been stated against any Defendant, it need not reach the alternative arguments raised by Commonwealth, other than to note that they appear to the Court to be well-founded and another reason for dismissal of the claims against Commonwealth specifically.

support for his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at 563 n.8.

Although detailed factual allegations are not required, a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.  The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level" and into the "realm of plausible liability." *Id*. at 555, 557 n.5.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955)).  For a claim to have facial plausibility, a plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted).

Moreover, as to allegations of fraud, Rule 9(b) of the Rules of Federal Civil Procedure requires that a party alleging fraud must state with particularity the circumstances constituting the fraud.  FED. R. CIV. P. 9(b).

### ANALYSIS

The Court notes that, based on the documents before the Court, the refinance at issue occurred no later than March 2008.  This suit was not filed until May 2012.  No answer has been filed to assert a statute of limitations defense, and the matter of limitations does not appear to be

raised in either motion.  Thus, to the extent Plaintiff's claims should not otherwise be dismissed based on an applicable statute of limitations, as stated fully below, the Court finds that he has failed to state any claim on the merits.

## Quiet Title and Challenge of MERS

The Court first addresses Plaintiff's claims to clear title to the Property and challenge of MERS.  In a suit to quiet title, a plaintiff "must allege right, title, or ownership in himself or herself with sufficient  certainty to enable the court to see [that] he or she has a right of ownership that will warrant judicial interference."  *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App. – Beaumont 2000, pet. denied).  Indeed, Texas courts have made a plaintiff's burden in a suit to quiet title very clear:

> In a suit to remove a cloud from his title, the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief.  That is, the plaintiff must prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove.

*Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App. – Houston [1 Dist.] 2009, pet. denied) (internal citations omitted).  *See also Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. – Corpus Christi 2001, no pet.) ("A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title.").

Here, Plaintiff does not allege that he did not execute the Deed of Trust naming MERS as the nominee for the Lender and its successors and the beneficiary under the Security Instrument. Instead, he argues that "the certainty of Plaintiff's contract with one or more of Defendants is

clouded by events as they pertain to the involvement of MERS." Dkt. 14 at 37.  Plaintiff's response

to the motion to dismiss expounds on his attack of the MERS system and argues that his "split the

note" argument has been repeatedly upheld by district and appellate courts.

In fact, Plaintiff's "split the note theory" has been consistently rejected in this Circuit. *Martins v. BAC Home Loans Servicing, L.P.*, __ F.3d __, 2013 WL 3213633, 4 (5th Cir. 2013) (The "split-the-note" theory is therefore inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned."); *Wigginton v. Bank of New York Mellon*, 488 Fed. Appx. 868, 870 (5th Cir. 2012) (affirming dismissal of breach of contract and other claims that Texas law rejects split the note theory); *Richardson v. CitiMortgage, Inc.*, 2010 WL 4818556, at *5 (E.D. Tex. 2010) (rejecting the plaintiff's attack on MERS, and noting that "[u]nder Texas law, where a deed of trust, as here, expressly provides for MERS to have the power of sale, then MERS has the power of sale") (*citing Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App. – Eastland 2010)); *Allen v. Chase Home Finance, LLC*, 2011 WL 2683192, at *3-4 (E.D. Tex. 2011); *Anderson v. CitiMortgage, Inc.*, 2011 WL 1113494, at *1-2 (E.D. Tex. 2011); *see also Santarose v. Aurora Bank FSB*, 2010 WL 2232819, at *5 (S.D. Tex. 2010) (rejecting the argument that MERS lacked standing to foreclose and was not a real party in interest); *Wiggington v. Bank of New York Mellon*, 2011 WL 2669071, at *3 (N.D. Tex. Jul. 7, 2011).  "Because the deed of trust specifically provided that MERS would have the power of sale, MERS had the power of sale that was passed to U.S. Bank upon MERS's assignment."  *DeFranchesci v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, at *4 (N.D. Tex. Aug. 31, 2011) (quoting *Richardson*, 2010 WL 4818556, at *5); *see also Casterline v. OneWest Bank, F.S.B.*, 2013 WL 3868011, 3 (5th Cir. 2013) ("MERS had the authority

8

to transfer the Security Instrument together with the power to foreclose to another party, including

OneWest.").

> The Deed of Trust signed by Plaintiff and attached to Defendants' motion:
>
> TRANSFER OF RIGHTS IN THE PROPERTY
>
> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (I) the repayment of the Loan, and all renewals, extensions and modifications of the Note; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property...

Dkt. 17-2 at 4.[6]  Plaintiff's claims as to who held the Note lack merit, as "the mortgage servicer need

not hold or own the note and yet would be authorized to administer a foreclosure." *Martins*,

__F.3d. __, 2013 WL 3213633 at 3. *See also Casterline*, 2013 WL 3868011 at 3 ("Texas law did

not require OneWest to present the original Note to foreclose on Casterline's property.").  And,

Plaintiff's claims that MERS's assignment of the mortgage was not recorded is not enough to state

his superiority. *See, e.g,, Reinagel v. Deutsche Bank Nat. Trust Co.*, 2013 WL 3480207, 4 (5th Cir.

2013) (defects in recording might prevent bank from foreclosing had a third party purchased the

underlying real estate from the homeowners without actual knowledge of the mortgage, they do not

---

[6]Although a district court may generally not go outside the complaint when considering a motion to dismiss, a district court may consider documents attached to a motions to dismiss if the documents are referenced by the plaintiff's complaint and are central to the plaintiff's claims. *Scanlan v. Tex*as *A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004).  The Deed of Trust is central to Plaintiff's claims, and the Court has considered any other documents submitted by the parties in conjunction with the motions to dismiss under this standard.

affect the bank's rights against the homeowners).[7]

Finally, the Court notes that, according to Defendants, Plaintiff has not made a mortgage payment since sometime in 2011.  Although Plaintiff alleges that "[f]rom the time of the refinancing until the filing of this petition, no Defendant has declared a default in the refinancing obligation by Plaintiff to any lender,"[8] Plaintiff has subsequently stated that he stopped paying on the Promissory Note and that GMAC commenced foreclosure proceedings against him.  *See* Dkt. 19 at 26. Plaintiff's superiority is not sufficiently stated.  Based on the clear language of the Deed of Trust and the case law in this Circuit, Plaintiff has simply not shown any facts that would give rise to a quiet title claim and his declaratory judgment claim should be dismissed.  *See Morlock, L.L.C. v. JP Morgan Chase Bank, N.A.*, 2013 WL 2422778, 2 (5th Cir. 2013) (finding that no quiet title claim had been stated where the plaintiff did not challenge the validity of the Deed of Trust or suggest its interest was superior to the Deed of Trust but merely questioned the validity of the assignment of the Deed of Trust by MERS);  *Turner v. AmericaHomeKey Inc.*, 2013 WL 657772, 3 (5th Cir. 2013) (affirming dismissal of quiet title action which was not based on strength of the plaintiff's title but instead focused on the weaknesses of the defendants' interests in the property).

---

[7]The Fifth Circuit has also rejected challenges by borrowers based on demands for the original mortgage documents.  *Reinagel*, 2013 WL 3480207 at 6 ('most courts, including district courts in this Circuit, have rejected the "show-me-the-note" defense, holding that though a mortgagee must establish that it owns the note to foreclose, it need not produce the original."); *see also Casterline*, 2013 WL 3868011 at 3 ("Texas law did not require OneWest to present the original Note to foreclose on Casterline's property.").

[8]Dkt. 14 at ¶36.

The Court agrees with Defendants that no quiet title action has been stated and any requests for declaratory judgment regarding title or ownership of the Property or the validity of the lien should be dismissed.

**Fraud**

Next, the Court turns to Plaintiff's fraud claim.  To assert a claim of fraud under Texas law, a plaintiff must allege: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.  *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).   Further, to state a claim for fraud in federal court, a plaintiff must state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) ("In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.") (citing *United States ex rel. Riley v. St. Luke's Episcopal Hospital,* 355 F.3d 370, 381 (5th Cir. 2004) (citing 2 James W. Moore, et al., Moore's Federal Practice § 9.03[1][b] at 9-18 through 9-19 (3d ed. 2003))).

Here, Plaintiff alleges that "Defendants made false, material representations to Plaintiff to secure his business and to induce him into the refinancing." Dkt. 14 at ¶164.  The Court finds that Plaintiff's fraud allegations – lodged against Defendants as a whole – lack the specificity of 'who, what, when, where, and how' of any representations made *to Plaintiff* with the intent to defraud him, as is required by Rule 9 and its progeny.  *Columbia/HCA Healthcare Corp*., 125 F.3d at 903. Further, Plaintiff has not alleged how he relied on any fraudulent misrepresentations or how he was injured by them – both required elements of a fraud claim.  The allegation that Defendants required him to sign a "Texas Mortgage Fraud Notice," advising him of the penalties associated with mortgage fraud does not state a fraud claim or reliance thereon.  It merely supports a contention that he was advised of penalties for fraud.

In his response to the motion to dismiss, Plaintiff alleges that Defendants' false representations "include the real identity of the lender, the true identity of the actual holder, owner or holder in due course of the note and the willful destruction of the Chain of Title through separation of the Deed of Trust from the Promissory Note." Dkt. 19 at 23.  Plaintiff also refers the Court to various provisions in his complaint containing his allegations of fraud.  *See* Dkt. 19 at 23. In one cited section, Plaintiff argues that the Deed of Trust was fraudulent because it is typed in fine print and contains an insufficient description of MERS.  In other cited portions of the complaint, Plaintiff appears to challenge MERS's form of organization, procedures, and internal operations. Plaintiff also contends that because of a difference in the "OrgID" number recorded in the Collin County Recorder's Office, another entity must have funded his Property.  Plaintiff also claims that "[b]ecause they knew the perfect payment history and profile of the Plaintiff, Homecomings

Financial, L.L.C. offered a fraudulent no/low documentation loan to the Plaintiff." Dkt. 14 at ¶141.

Even if any such allegations could be construed as false statements (and again the Court finds that

they lack the specificity required by Rule 9 as to who made them and when they were made),

Plaintiff has not identified any portions of his complaint – and the Court can identify none – where

he alleges how he specifically relied on these alleged misrepresentations and any damages resulting

therefrom. Such is required to allege a fraud claim, and Plaintiff's fraud claims should be dismissed.

*DTPA & Texas Business and Commerce Code & RICO*

As part of his fraud allegations, Plaintiff asserts that Defendants violated "18 U.S.C. §§1341

and 1343, 18 U.S.C. §1961, 18 U.S.C. § 1963 and Texas Business and Commerce Code §17.45 and

27.01." Dkt 14 at ¶ 166. This allegation in itself is insufficient under Rule 12(b)(6) as it does not

go beyond mere labels and conclusions and asserts three separate claims in a single sentence without

any factual specificity. For this reason alone, these claims should be dismissed.

More importantly, however, none of the facts alleged by Plaintiff support the statutory

provisions cited. As argued by Defendants, Plaintiff cannot state a DTPA claim — a claim not even

labeled by Plaintiff in his complaint — because he has not stated the facts showing he is a consumer.

To establish consumer status under the DTPA, a plaintiff must be "an individual ... who seeks or

acquires by purchase or lease, any goods or services ...." TEX. BUS. & COM. CODE § 17.45(4).

Generally, loans of money or extensions of credit are not considered "goods" or "services" that can

form the basis of a DTPA claim. *Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351, 3 (N.D.

Tex. 2010) (where party was attempting to only borrow money and not purchase a good or a service,

it did not satisfy the requirements for consumer status under the DTPA and therefore failed to state

a claim pursuant to the Texas Deceptive Trade Practices Act); *Guardian Life Ins. Co. v. Kinder*, 663 F. Supp.2d 544, 553 (S.D. Tex. 2009); *La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 567 (Tex. 1984); *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174 (Tex. 1980); *Maginn v. Norwest Mortgage, Inc.,* 919 S.W.2d 164, 166-67 (Tex. App. – Austin 1996, no writ).  A party who obtains a loan which is "inextricably intertwined" in the purchase or lease of a good or service may qualify as a consumer.  *Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex. 1982) (finding that a bank customer qualified as a consumer because he sought financing to purchase a dump truck); *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex. 1983) (holding that party was a consumer when party's mortgage loan was intertwined with contractor's agreement to build a house); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. – Fort Worth 2007, pet. denied) (the refinance of home equity loan cannot qualify as a good or a service under the DTPA); *Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp.2d 842, 855 (N.D. Tex. 2006) (one who obtains a home equity loan does not obtain a "good" or a "service" to qualify as a consumer under the DTPA).  Here, however, Plaintiff has not stated that he was a consumer under the DTPA nor do his allegations show how he could be treated as a DTPA consumer under the case law guiding this Court.  The DTPA allegations should be dismissed.

As to Plaintiff's RICO claims, even if they were adequately labeled or expounded upon, the Court finds that those also fail.  A plaintiff bringing a claim under the RICO statute,18 U.S.C. § 1961, *et seq*., must allege and show at least the three following elements: (1) a person who engages in (2) a pattern of racketeering activity, and (3) connected to the acquisition, establishment, conduct, or control of an enterprise.  18 U.S.C. § 1962; *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir.

2009).  A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.  *Id.*  An enterprise under RICO is a group of persons or entities associating together for the common purpose of engaging in a course of conduct, and an enterprise may be a legal entity or any union or group of individuals ***associated in fact***.  *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citing 18 U.S.C. § 1961(4)) (emphasis added).

The plaintiff alleging an association-in-fact enterprise must adduce evidence demonstrating "'an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit.'"  *Atkinson v. Anadarko Bank & Trust Co.,* 808 F.2d 438, 439-40 (5th Cir. 1987) (quoting *Turkette,* 452 U.S. at 583, 101 S. Ct. at 2528).  The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages.  *Whelan*, 319 F.3d at 229 (citing 18 U.S.C. § 1961(4)).

Plaintiff's complaint fails to allege any specific facts as to his claims that would show an enterprise of individuals associated in fact with Defendants.   And, for the reasons stated above, Plaintiff's challenge to the MERS system lacks merit.  Therefore, to the extent Plaintiff asserts any claims under RICO, they are dismissed.

Finally, Plaintiff cannot state a claim of statutory fraud under Section 27.01 of the Texas Business and Commerce Code.  Not only do Plaintiff's statutory fraud claims fail for the same reasons that his common law fraud claims do, mortgage loans do not fall under the statute.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008) (citing *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.– Waco 2000) ("A loan transaction, even if secured by land, is not

considered to come under the statute.").

For these reasons, Plaintiff's fraud claims and accompanying claims of statutory fraud, DTPA violations and RICO claims should be dismissed for failure to state a claim.

**Breach of Contract**

Plaintiff also has asserted a breach of contract claim against all Defendants collectively.  In order to establish a breach of contract claim, Plaintiff must plead facts showing: (1) the existence of a valid contract; (2) performance or tender of performance by Plaintiff; (3) breach by Defendants; and (4) damages resulting from the breach.  *Cadillac Bar West End Real Estate v. Landry's Restaurants, Inc.,* 2013 WL 1721954, 2 (Tex. App. – Dallas 2013, no pet.) (citing *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App. – Dallas 2008, no pet.).   Further, in order to properly plead a claim based on breach of the contract, Plaintiff must point to a specific provision in the contract that was breached by Defendants.  *Coleman v. Bank of Am., N.A.*, 2011 WL 2516169, at *1 (N.D. Tex. 2011) (citing *Case Corp. Inc. v. Hi-Class Bus. Sys. of Am.*, 184 S.W.3d 760, 769 – 70 (Tex. App. – Dallas 2005, pet. denied)) (dismissing breach of contract claim for failure to state a claim where "plaintiff points to no specific provision in the Deed of Trust that was breached by defendant").

Here, Plaintiff alleges there "is a valid, enforceable contract," that he "performed, tendered performance of or was excused from performing his contractual obligations," that "Defendants breached the contract," and that he was injured by said breach.  Dkt. 14 at ¶169.  Although he incorporates by reference 40 preceding pages of his complaint, Plaintiff does not identify the contract at issue, the manner in which he performed or was excused from performance, the provision breached or how Defendants breached it or how he was injured.  Indeed, he does not even state

16

which of the eight named Defendants he entered into a contract with.  His complaint fails to state a breach of contract claim that goes beyond mere "labels and conclusions" in pleading a breach of contract claim.  *Twombly*, 550 U.S. at 555.  Without identification of the contract(s) at issue, the provisions breached, Defendants' specific actions constituting breach, or the damages that resulted, a breach of contract claim has not been stated and it should be dismissed.

Finally the Court notes as to Plaintiff's breach of contract claims that, even if the Court were to consider the allegation in Plaintiff's response to the motion to dismiss that "Defendants breach the contract by hiding the true identity of the lender in the official 2008 Deed of Trust, Promissory Note and fraudulently releasing the first and second liens on the property and breaking the Chain of Title" – an allegation which is not succinctly alleged in his complaint – Plaintiff has not specifically stated facts to show how he was damaged by any change in lender. And ultimately, as noted above, Plaintiff has conceded that he stopped paying on the Promissory Note. *See* Dkt. 19 at 26.  For these reasons, the Court finds that he has not stated a breach of contract claim.  *See, e.g. Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, 2013 WL 363118, 1 (5th Cir. 2013) ("a party in default cannot assert a claim for breach against the other party").

**Violation of the Texas Mortgage Broker License Act, Texas Finance Code § 156.001, et seq**.

In his amended complaint, Plaintiff argues that one or more of Defendants failed to register in accordance with the Texas Mortgage Broker License Act and is therefore liable to him pursuant to Section 156.406 of the Texas Finance Code.  Subpart (b) of that statutory section provides:

> (b) A person who received money, or the equivalent of money, as a fee or profit because of or in consequence of the person acting as a residential mortgage loan originator without an active license or being exempt under this chapter is liable

for damages in an amount that is not less than the amount of the fee or profit
received and not to exceed three times the amount of the fee or profit received, as
may be determined by the court.  An aggrieved person may recover damages
under this subsection in a court.

TEX. FIN. CODE § 156.406.  Here, Plaintiff has not alleged which of the eight named Defendants

acted as an unlicensed loan originator.

Plaintiff has not alleged facts to show that he was an "aggrieved person" under the statute,

as Texas law requires.  "[T]o be an aggrieved person under section 156.406(b), the claimant must

have paid all or part of the fee or profit to the unlicensed mortgage broker or loan officer." *Dohalick*

*v. Moody Nat'l Bank*, 375 S.W.3d 537, 541 (Tex. App. – Houston [14 Dist.] 2012, no pet.).

Plaintiff's complaint alleges that Robert Stanley, acting for and on behalf of ABB Mortgage

and/or Walid Abd, was the licensed mortgage broker who called him "early in 2008" to induce him

into refinancing.  Dkt. 14 at ¶29.  Stanley, ABB Mortgage and Walid Abd, however, are not parties

to this suit.  Plaintiff's complaint appears to suggest that some Defendant, other than non-party

Stanley/ABB, earned part of the brokerage fee due to discrepancies in the HUD statement but fails

to specify how this violated the Act or how he was aggrieved thereunder.  *See* Dkt. 14 at ¶39.  No

claim has thus been stated based on this allegation.

Plaintiff also alleges that "[t]hese and related matters caused Plaintiff concern about whether

other closing charges were either not paid, were paid to the wrong party, were misallocated, were

fabricated, or were otherwise misrepresented, reflecting an overcharge in the process, which party

actually funded the loan, whether it was securitized before closing, what was paid to who to prepare

the loan for closing, what was told Plaintiff that was false and misleading and what wasn't, whether

there were or are still unannounced yield spread premiums embedded in the transaction(s), whether the property appraisal was misleading or professionally inapposite, whether the credit scores were artificially hiked to permit a financing or refinancing by a borrower, the Plaintiff, who otherwise would not have qualified and numerous other related matters." Dkt. 14 at ¶47.  This allegation again fails to state facts that would show which Defendant Plaintiff claims he paid fees to, and it fails to state which particular Defendant was not licensed.  Plaintiff's allegations regarding any unlicensed residential mortgage loan originators simply are insufficient to "raise a right to relief above the speculative level" and therefore should be dismissed.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007).

**Violation of the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act, Texas Finance Code §157.001, et seq.**

As to his allegations regarding the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act, Plaintiff again alleges that one or more of Defendants is not registered in violation of Section 157.003 of the Texas Finance Code and that no Defendant has been discharged in accordance with Section 157.030.  As with his claims under Section 156.001, Plaintiff again fails to identify which Defendant failed to comply with the statute.  Plaintiff also fails to specifically allege the actual damages he suffered as a result of any violation of this Act.  *See* TEX. FIN. CODE § 157.027.  The Court notes that, in his response, Plaintiff appears to base his Texas Finance Code claims under his challenge of MERS's authority as nominee and beneficiary.  The Court has rejected that theory as fully discussed above and it can form the basis of no claims against Defendants.  The claim under Section 157.001 does not go beyond mere labels and conclusions and should be dismissed.

**"Other Causes of Action"**

As to Plaintiff's "other causes of action," which he claims "will not become clear until discovery is allowed," Dkt 14 at 176, such is not a sufficient factual allegation to raise a right to relief.  They should be dismissed.

**Accounting & Declaratory Relief**

Because Plaintiff has failed to demonstrate any fact issues entitling him to any relief, he is not entitled to an accounting or declaratory judgment.  *See Animale Group Inc. v. Sunny's Perfume Inc.*, 256 Fed. Appx. 707, 709 (5th Cir. 2007) (accounting is generally an equitable remedy) (citing *Maltina Corp. v. Cawy Bottling Co.,* 613 F.2d 582, 584-85 (5th Cir.1980));  *California Prods., Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780, 781 (Tex. 1960) ("there must be a justiciable controversy between the parties before a declaratory judgment action will lie.").

In its findings herein, the Court has been mindful that *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them.  *See Haines v. Kerner*, 404 U.S. 519, 521, 92 S. Ct. 594, 30 L. Ed.2d 652 (1972); *U.S. v. Lumbreras-Amaro*, 627 F. Supp.2d 752, 757 (S.D. Tex. 2008). Indeed, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal citations omitted). Nonetheless, *pro se* litigants are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).  The Court has evaluated Plaintiff's pleadings herein accordingly and, even construing the pleadings liberally, finds that no claims have

been stated and that no amendment of the pleadings is warranted.

**RECOMMENDATION**

Therefore, the Court recommends that Defendant Commonwealth Title Insurance Corporation's Motion to Dismiss for Plaintiff's Failure to State a Claim (Dkt. 15) and Defendants Homecomings Financial, LLC ("Homecomings"), GMAC Mortgage, LLC ("GMAC"), Ally Bank ("Ally"), Mortgage Electronic Registration Systems, Inc. ("MERS"), MERSCORP, Inc., and Federal National Mortgage Association's ("Fannie Mae") Motion to Dismiss (Dkt. 17) be GRANTED and that all claims against Defendants Commonwealth Land Title Insurance Company, MERS, MERSCORP., Inc., Ally and Fannie Mae should be dismissed with prejudice for failure to state a claim, that any declaratory judgment action against Homecomings and GMAC be dismissed with prejudice, that any claims against Homecomings Wholesale Funding be dismissed without prejudice pursuant to Rule 4(m), and that all remaining claims against Homecomings and GMAC be and remain STAYED pending the resolution of the bankruptcy proceedings.

The Court notes however, that, upon the lifting of any stay, the analysis in this report finding that Plaintiff has stated no statutory or common law fraud, breach of contract, RICO, DTPA, Texas Mortgage Broker License Act, Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act, accounting or "other" claims against Defendants Commonwealth Land Title Insurance Company, MERS, MERSCORP, Inc., Ally and Fannie Mae would be equally applicable to Homecomings and GMAC, and, upon the lifting of the stay, a separate report and recommendations will be entered recommending that they be applied accordingly.

21

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.   28 U.S.C.A. § 636(b)(1)(C).

Failure to timely file written objections to the proposed findings and recommendations contained in this report shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice.  *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 13th day of August, 2013.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

22